UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
DIVISION: MIAMI

In Re:                                    PROCEEDING UNDER CHAPTER 13
Miriam Cristina Godoy                     CASE NO.: 14-16332-RAM
XXX-XX-6698

_____Debtor_____/

## MOTION TO VALUE AND DETERMINE SECURED STATUS OF LIEN ON REAL PROPERTY

### IMPORTANT NOTICE TO CREDITORS: THIS IS A MOTION TO VALUE YOUR COLLATERAL

**This Motion seeks to value collateral described below securing the claim of the creditor listed below.**

---

**IF YOU DISPUTE THE VALUE ALLEGED OR TREATMENT OF YOUR CLAIM PROPOSED IN THIS MOTION, YOU MUST FILE A WRITTEN OBJECTION NO LATER THAN TWO BUSINESS DAYS PRIOR TO THE SCHEDULED HEARING [SEE LOCAL RULE 3015-3(A)(2)]**

**If you have not filed a proof of claim, you have until the later of the claims bar date or 21 days from the date this Motion was served upon you to file a proof of claim or you will be deemed to have waived the right to payment of any unsecured claim to which you might otherwise be entitled. [See Local Rule 3015-3(A)(4)]**

1. Pursuant to 11 U.S.C. §506, Bankruptcy Rule 3012, Local Rule 3015-3, the debtor seeks to value real property securing the claim of **GB Home Equity, LLC, a Wisconsin Limited Liability Company as assigned to or serviced by Ditech.com/Gmac Mtg (2ⁿᵈ Mortgage) ("Lender")**.   Lender holds a mortgage recorded on August 5, 2004 at OR Book 22548 at Pages 3937-3942 in the official records of Miami-Dade County, Florida.

2. The real property is located at: <u>1016 Almeria Ave Coral Gables, FL 33134</u>, and is more particularly described as follows:

## LOT 8, BLOCK 14, OF CORAL GABLES SECTION "A", ACCORDING TO THE PLAT, AS RECORDED IN PLAT BOOK 5, PAGE 102, OF THE PUBLIC RECORDS OF DADE COUNTY, FLORIDA

3. At the time of the filing of this case, the value of the real property is $572,000.00 as determined by Miami Dade County.

LF-77 (rev. 04/29/11)

4. Chase Bank, N.A.   holds a lien on the real property, senior to priority to Lender, securing claim in the aggregate amount of $650,000.00

5. Lender's collateral consists solely of debtor's principal residence.   As there is no equity in the real property after payment in full of the claims secured by liens senior to that of Lender, the value of Lender's secured interest in the real property is $0.

6. The undersigned reviewed the docket and claims register and states:

Lender has not filed a proof of claim in this case.   The trustee shall not disburse any payment to Lender unless a proof of claim is timely filed. In the event a proof of claim is timely filed, it shall be classified as a secured claim to the extent provided in paragraph 5, above, and as a general unsecured claim for any deficiency, regardless of the original classification in the proof of claim as filed.

7. The subject real property may not be sold or refinanced without proper notice and further order of the court.

**WHEREFORE,** the debtor respectfully requests an order of the Court   (a) determining the value of the real property in the amount asserted in this Motion, (b) determining the secured status of the Lender's lien as stated above, (c) determining that any timely filed proof of claim is classified as stated above, (d) if Lender's secured interest in the real property is determined to be $0, deeming Lender's mortgage on the real property void and extinguished automatically, without further order of the Court, upon entry of the debtor's discharge in this chapter 13 case, and (e) providing such other and further relief as is just.

**NOTICE IS HEREBY GIVEN THAT:**

1. In accordance with the rules of this Court, unless an objection is filed with the Court and served upon the debtor, the debtor's attorney, and the trustee at least two (2) business days prior to the hearing scheduled on this Motion, the value of the collateral may be established at the amount stated above without further notice, hearing or order of the Court.   Pursuant to Local Rule 3015-3, timely raised objections will be heard at the hearing scheduled on the Motion.

2. The undersigned acknowledges that this Motion and the notice of hearing thereon must be served pursuant to Bankruptcy Rule 7004 and Local Rule 3015-3 at least 21 days prior to the hearing date and that a certificate of service must be filed when the Motion and notice of hearing thereon are served.

Respectfully Submitted:
**Law Offices of Patrick L. Cordero, Esq.**
Attorney for Debtors
198 NW 37 Avenue
Miami, Fl 33125
Tel: (305) 445-4855


_____/s/ FILED ECF_____
PATRICK L. CORDERO, ESQ.
Fl Bar No: 801992

LF-77 (rev. 04/29/11)

CFN 2004R0671345
OR Bk 22548 Pgs 3937 - 3942; (6pgs)
RECORDED 08/05/2004 15:48:28
MTG DOC TAX 700.00
INTANG TAX 400.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

**RECORDATION REQUESTED BY:**
GB Home Equity, LLC, a Wisconsin Limited Liability
Company
GBHE Southeast Region
4000 W Brown Deer Road
Milwaukee, WI 53209-1221

**WHEN RECORDED MAIL TO:**
GB Home Equity, LLC
Attn: Post Closing, Collateral Clerk
P.O. Box 240140
Milwaukee, WI 53224-9007

This Mortgage prepared by:

Name: GEORGIA WALLACE, Loan Processor
Company: GB Home Equity, LLC, a Wisconsin Limited Liability Company
Address: 4000 W Brown Deer Road, Milwaukee, WI 53209-1221

## FOR USE WITH SECURED REVOLVING CREDIT AGREEMENT

**MAXIMUM LIEN.** The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $200,000.00, plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.

**THIS MORTGAGE** dated July 24, 2004, is made and executed between MIRIAM C. GODOY, whose address is 1016 ALMERIA AVENUE, CORAL GABLES, FL 33134-5502; TITLE VESTED AS : MIRIAN C. GODOY (referred to below as "Grantor") and GB Home Equity, LLC, a Wisconsin Limited Liability Company, whose address is 4000 W Brown Deer Road, Milwaukee, WI 53209-1221 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in MIAMI-DADE County, State of Florida:

LYING AND BEING LOCATED IN THE CITY OF CORAL GABLES , COUNTY  OF DADE , STATE OF FLORIDA ; ALL THAT CERTAIN PARCEL OR TRACT OF LNAD KNOWN AS:

LOT 8, BLOCK 14, OF CORAL GABLES SECTION "A" , ACCORDING TO THE PLAT , AS RECORDED IN PLAT BOOK  5, PAGE 102, OF  THE PUBLLIC RECORDS OF DADE COUNTY , FLORIDA .

**The Real Property or its address is commonly known as  1016 ALMERIA AVENUE, CORAL GABLES, FL 33134-5502.  The Real Property tax identification number is 03-4118-001-1341**

**REVOLVING LINE OF CREDIT.** This Mortgage secures the Indebtedness including, without limitation, a revolving line of credit under which, upon request by Grantor, Lender, within twenty (20) years from the date of this Mortgage, may make future advances to Grantor. Such future advances, together with interest thereon, are secured by this Mortgage. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Mortgage and any intermediate balance.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT WITH THE CREDIT LIMIT OF $200,000.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until Grantor's interest in any or all of the Property is foreclosed, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and



**MORTGAGE**
**(Continued)**

Loan No: 3150548861                                                                                                          Page 2

warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**MORTGAGE**
**Loan No: 3150548861** **(Continued)** **Page 3**

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security

**MORTGAGE**

**Loan No: 3150548861**                                **(Continued)**                                                **Page 4**

interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

FULL PERFORMANCE. If Grantor pays all the indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

EVENTS OF DEFAULT. Grantor will be in default under this Mortgage if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

RIGHTS AND REMEDIES ON DEFAULT. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

Accelerate Indebtedness. Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

UCC Remedies. With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Judicial Foreclosure. Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

Deficiency Judgment. If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

Tenancy at Sufferance. If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor. Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

Sale of the Property. To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Notice of Sale. Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Election of Remedies. All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

NOTICES. Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**MORTGAGE**
Loan No: 3150548861                                     **(Continued)**                             Page 5

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Arbitration.** Grantor and Lender agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Mortgage or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Mortgage shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by and interpreted in accordance with federal law and the laws of the State of Florida. This Mortgage has been accepted by Lender in the State of Florida.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Milwaukee County, State of Wisconsin.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

DEFINITIONS. The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means MIRIAM C. GODOY and includes all co-signers and co-makers signing the Credit Agreement.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated July 24, 2004, **with credit limit of $200,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The final maturity date of the Credit Agreement is July 24, 2024. NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means MIRIAM C. GODOY.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means GB Home Equity, LLC, a Wisconsin Limited Liability Company, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**MORGAGE**
**(Continued)**

Loan No: 3150548861                                                                                          Page 6

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The word "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

WAIVER OF FUTURE ADVANCES UNDER PRIOR MORTGAGE. Grantor hereby agrees that the principal indebtedness secured by any mortgages or security agreements which are senior to the lien of this Mortgage shall not exceed the amount which upon the date of the execution of this Mortgage has actually been advanced and is secured by each such prior mortgage and security agreement. As principal indebtedness of such prior mortgages or security agreements is reduced, the maximum amount that may be secured thereby shall also be reduced to the then outstanding principal balance(s). Grantor hereby waives the right to receive any additional or future advances under any such prior mortgages or security agreements. This paragraph shall constitute the notice required by Florida Statutes Section 697.04(b).

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
   MIRIAM C. GODOY

WITNESSES:

X _____

X _____

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _F-loridA_____ )
                                      ) SS
COUNTY OF _Miami Dade__ )

The foregoing instrument was acknowledged before me this _24th_ day of _July_ 20_04_ by MIRIAM C. GODOY, TITLE VESTED AS : MIRIAM C. GODOY , who is personally known to me or who has produced _Drivers_ _License_ as identification and did / did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

LUIS BACA
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

Luis Baca
Commission # DD131348
Expires July 4, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

Accurate Appraising Services,Inc (786)587-8865

# APPRAISAL OF REAL PROPERTY

| Borrower/Client | N/A | | | | File No. | EM-12-Godoy |
|---|---|---|---|---|---|---|
| Property Address | 1016 Almeria Avenue | | | | | |
| City | Coral Gables | County | Miami Dade | State FL | Zip Code | 33134 |
| Lender | Godoy, Miriam C. | | | | | |



## LOCATED AT
1016 Almeria Avenue
Coral Gables, FL 33134
Coral Gables Sec A Pb 5-102 Lot 8 Blk 14

## FOR
Godoy, Miriam C.

## OPINION OF VALUE
572,000

## AS OF
12/09/2013

## TABLE OF CONTENTS

Summary of Salient Features ......................................................................................................................... 1
USPAP Identification .................................................................................................................................... 2
GP Residential ............................................................................................................................................ 3
Building Sketch (Page - 1) ........................................................................................................................... 6
Location Map .............................................................................................................................................. 7
Subject Photos ........................................................................................................................................... 8
Subject Photos Interior ............................................................................................................................... 9
Comparable Photos 1-3 ............................................................................................................................. 10
Addendum ................................................................................................................................................. 11

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 1016 Almeria Avenue |
| | Legal Description | Coral Gables Sec A Pb 5-102 Lot 8 Blk 14 |
| | City | Coral Gables |
| | County | Miami Dade |
| | State | FL |
| | Zip Code | 33134 |
| | Census Tract | 0058.01 |
| | Map Reference | 54 41 18 |
| **SALES PRICE** | Sale Price | $ |
| | Date of Sale | N/A |
| **CLIENT** | Borrower/Client | N/A |
| | Lender | Godoy, Miriam C. |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 2,410 |
| | Price per Square Foot | $ N/A |
| | Location | Suburban |
| | Age | 19 Years |
| | Condition | Average |
| | Total Rooms | 6 |
| | Bedrooms | 3 |
| | Baths | 3 |
| **APPRAISER** | Appraiser | Isbel Gonzalez St. Cert. Res. REA RD 4911 |
| | Date of Appraised Value | 12/09/2013 |
| **VALUE** | Opinion of Value | $ 572,000 |

**FROM:**
Isbel Gonzalez
Accurate Appraising Services, Inc
19651 SW 132nd Place
Miami, FL 33177

Telephone Number: 786-287-8665          Fax Number: 1-888-812-8288

# INVOICE

| INVOICE NUMBER |
| --- |
| EM-12-Godoy |

| DATE |
| --- |
| 12/09/2013 |

**TO:**
Godoy, Miriam C.

Telephone Number:              Fax Number:
Alternate Number:              E-Mail:

| REFERENCE | |
| --- | --- |
| Internal Order #: | EM-12-Godoy |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | EM-12-Godoy |
| Other File # on form: | EM-12-Godoy |
| Federal Tax ID: | |
| Employer ID: | |

## DESCRIPTION

Lender: Godoy, Miriam C.
Purchaser/Borrower: N/A
Property Address: 1016 Almeria Avenue
City: Coral Gables
County: Miami Dade
Legal Description: Coral Gables Sec A Pb 5-102 Lot 8 Blk 14

Client: Godoy, Miriam C.

State: FL          Zip: 33134

## FEES

| FEES | AMOUNT |
| --- | --- |
| Full Appraisal | 200.00 |
| **SUBTOTAL** | 200.00 |

## PAYMENTS

| PAYMENTS | | | AMOUNT |
| --- | --- | --- | --- |
| Check #:  Date:  Description: | | | 200.00 |
| Check #:  Date:  Description: | | | |
| Check #:  Date:  Description: | | | |
| | | **SUBTOTAL** | 200.00 |
| | | **TOTAL DUE** | $          0 |

Accurate Appraising Services, Inc. (786)287-8685

Main File No. EM-12-Godoy Page #2

| Borrower/Client | N/A | | | | | File No. EM-12-Godoy |
|---|---|---|---|---|---|---|
| Property Address | 1016 Almeria Avenue | | | | | |
| City | Coral Gables | County | Miami Dade | State | FL | Zip Code 33134 |
| Lender | Godoy, Miriam C. | | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is one of the following types:

☐ **Self Contained**   (A written report prepared under Standards Rule 2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ **Summary**   (A written report prepared under Standards Rule 2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ **Restricted Use**   (A written report prepared under Standards Rule 2-2(c) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
— the statements of fact contained in this report are true and correct.
— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.
— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
— my engagement in this assignment was not contingent upon developing or reporting predetermined results.
— my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— my analyses, opinions, and conclusions were developed, and the report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
— I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)
— no one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

## Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any state mandated requirements:

The appraisal intended user is the subject property owner requesting this appraisal and the intended use is to establish a subject opinion of value for a private purpose.

**APPRAISER:**

Signature: _____
Name:  Isbel Gonzalez St. Cert. Res. REA RD 4911
Date Signed:  12/09/2013
State Certification #:  RD 4911
or State License #: _____
State:  FL
Expiration Date of Certification or License:  11/30/2014

Effective Date of Appraisal:     12/09/2013

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____
Supervisory Appraiser Inspection of Subject Property:
☐ Did Not    ☐ Exterior-only from street    ☐ Interior and Exterior

Form ID06 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

EM-12-Godoy
File No.: EM-12-Godoy

# RESIDENTIAL APPRAISAL SUMMARY REPORT

**SUBJECT**

| | |
|---|---|
| Property Address: 1016 Almeria Avenue | City: Coral Gables | State: FL | Zip Code: 33134 |

County: Miami Dade · Legal Description: Coral Gables Sec A Pb 5-102 Lot 8 Blk 14

Assessor's Parcel #: 03-4118-001-1341

Tax Year: 2012 · R.E. Taxes: $ 10,965 · Special Assessments: $ 0 · Borrower (if applicable): N/A

Current Owner of Record: Godoy, Miriam C. · Occupant: ☒ Owner ☐ Tenant ☐ Vacant ☐ Manufactured Housing

Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☐ Other (describe) · HOA: $ ☐ per year ☐ per month

Market Area Name: Coral Gables · Map Reference: 54 41 18 · Census Tract: 0058.01

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: Establishing market value of subject property as per effective date of appraisal.

**ASSIGNMENT**

Intended User(s) (by name or type): Godoy, Miriam C.

Client: Godoy, Miriam C. · Address:

Appraiser: Isbel Gonzalez St. Cert. Res. REA RD 4911 · Address: 19651 SW 132nd Place, Miami, FL 33177

**MARKET AREA DESCRIPTION**

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|

| | | | PRICE | AGE | One-Unit 58 % | ☒ Not Likely |

Built up: ☒ Over 75% ☐ 25-75% ☐ Under 25% · $(000) (yrs) · 2-4 Unit 16 % · ☐ Likely * ☐ In Process *

Growth rate: ☐ Rapid ☒ Stable ☐ Slow · ☒ Owner · 280 Low 02 · Multi-Unit 19 % · * To:

Property values: ☒ Increasing ☐ Stable ☐ Declining · ☐ Tenant · 1,900 High 91 · Comm'l 3 %

Demand/supply: ☐ Shortage ☒ In Balance ☐ Over Supply · ☒ Vacant (0-5%) · 760 Pred 66 · Other 4 %

Marketing time: ☐ Under 3 Mos. ☒ 3-6 Mos. ☐ Over 6 Mos. · ☐ Vacant (>5%)

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): The subject's market area is bound by S Dixie Highway to the South, SW 38th Street to the North, SW 57th Avenue to the West, and SW 27th Avenue to the East. The predominant dwellings are single families that started developing about 91 years ago. Some commercial properties can be found along the major traffic arteries and over 75% of the area is built up with a stable growth rate . The predominant occupancy is by owners and no change in land use is announced or indicated. The current marketing time is over 3-6 months and property values are increasing. Current active and recent closed sales indicate supply and demand balanced with short, cash sales and foreclosure commonly found. Public parks, schools and shopping facilities are within the market area and can be easily accessed through the major traffic roads.

**SITE DESCRIPTION**

Dimensions: 50 x 125 · Site Area: 6,250 Sq.Ft.

Zoning Classification: R-7 · Description: Single Family 2101 to 2300

Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Are CC&Rs applicable? ☐ Yes ☐ No ☒ Unknown · Have the documents been reviewed? ☐ Yes ☐ No · Ground Rent (if applicable) $ /

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: Single Family · Use as appraised in this report: Single Family

Summary of Highest & Best Use: The highest and best use for this area is single family homes.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Street Level |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | FPL | Street | Asphalt | ☒ | ☐ | Size | Average |
| Gas | ☐ | ☐ | | Curb/Gutter | No/No | ☐ | ☐ | Shape | Rectangular |
| Water | ☒ | ☐ | Municipal | Sidewalk | Yes | ☒ | ☐ | Drainage | Adequate |
| Sanitary Sewer | ☒ | ☐ | Municipal | Street Lights | Yes | ☒ | ☐ | View | Residential |
| Storm Sewer | ☒ | ☐ | Municipal | Alley | None | | | | |

Other site elements: ☒ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No FEMA Flood Zone X · FEMA Map # 12086C0293L · FEMA Map Date 09/11/2009

Site Comments: The subject's site is typical for the immediate area.

**DESCRIPTION OF THE IMPROVEMENTS**

| General Description | Exterior Description | Foundation | Basement ☒ None | Heating Yes |
|---|---|---|---|---|
| # of Units 1 ☐ Acc.Unit | Foundation Concrete Ftg. | Slab No | Area Sq. Ft. | Type Central |
| # of Stories 2 | Exterior Walls CBS/Average | Crawl Space Yes | % Finished | Fuel Electric |
| Type ☒ Det. ☐ Att. ☐ | Roof Surface B.Tile/Avg. | Basement N/A | Ceiling | |
| Design (Style) 2 Story | Gutters & Dwnspts. None Noted | Sump Pump ☐ | Walls | Cooling Yes |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | Window Type Awning/Avg. | Dampness ☐ | Floor | Central Yes |
| Actual Age (Yrs.) 19 | Storm/Screens No | Settlement N/A | Outside Entry | Other None |
| Effective Age (Yrs.) 06 | | Infestation N/A | | |

| Interior Description | | Appliances | Attic ☐ None | Amenities | Car Storage ☐ None |
|---|---|---|---|---|---|
| Floors | Tile/Average | Refrigerator ☒ | Stairs ☐ | Fireplace(s) # | Garage # of cars ( 3 Tot.) |
| Walls | Drywall/Average | Range/Oven ☒ | Drop Stair ☐ | Patio Open | Woodstove(s) # | Attach. 1 |
| Trim/Finish | Wood/Average | Disposal ☒ | Scuttle ☐ | Deck | Detach. |
| Bath Floor | Tile/Average | Dishwasher ☒ | Doorway ☐ | Porch | Blt.-In |
| Bath Wainscot | Tile/Average | Fan/Hood ☒ | Floor ☐ | Fence Aluminium | Carport |
| Doors | Wood/Average | Microwave ☒ | Heated ☐ | Pool Inground | Driveway 2 |
| | | Washer/Dryer ☒ | Finished ☐ | | Surface Concrete |

Finished area above grade contains: 6 Rooms · 3 Bedrooms · 3 Bath(s) · 2,410 Square Feet of Gross Living Area Above Grade

Additional features: No additional features were considered in this appraisal.

Describe the condition of the property (including physical, functional and external obsolescence): The subject property is in average condition with no indication of major deterioration or repairs needed.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL** · Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE · 3/2007

# RESIDENTIAL APPRAISAL SUMMARY REPORT

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

**TRANSFER HISTORY**

Data Source(s):   MLX/Realist.com/Public Records

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing:   Previous sales are disclosed on grids. |
|---|---|
| Date: | |
| Price: | |
| Source(s): Public Record/MLS | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

**SALES COMPARISON APPROACH TO VALUE (if developed)** ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1016 Almeria Avenue | 1543 Bird Road | | 3916 Anderson Road | | 2710 Anderson Road | |
| | Coral Gables, FL 33134 | Coral Gables, FL 33134 | | Coral Gables, FL 33134 | | Coral Gables, FL 33134 | |
| Proximity to Subject | | 1.00 miles SW | | 0.82 miles SE | | 0.29 miles E | |
| Sale Price | $ | | $ 500,000 | | $ 572,500 | | $ 570,000 |
| Sale Price/GLA | $ N/A /sq.ft. | $ 250.00 /sq.ft. | | $ 255.12 /sq.ft. | | $ 318.61 /sq.ft. | |
| Data Source(s) | P.Record | Public Records/MLS | | Public Records/MLS | | Public Records/MLS | |
| Verification Source(s) | Inspection | Observation | | Observation | | Observation | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | N/A | Conventional | | Conventional | | Conventional | |
| Concessions | N/A | None Known | | Seller Contribution | -12,000 | None Known | |
| Date of Sale/Time | N/A | 01/28/2013 | | 05/22/2013 | | 10/30/2013 | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Site | 6,250 Sq.Ft. | 6,000 Sq.Ft. | | 5,000 Sq.Ft. | | 9,075 Sq.Ft. | -30,000 |
| View | Residential | Residential/Traffic | +50,000 | Residential | | Residential | |
| Design (Style) | 2 Story | 1 Story | | 1 Story | | 1 Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 19 Years | 11 Years | | 19 Years | | 58 Years | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total 6 / Bdrms 3 / Baths 3 | Total 6 / Bdrms 3 / Baths 2.5 | +1,500 | Total 6 / Bdrms 3 / Baths 2.5 | +1,500 | Total 6 / Bdrms 3 / Baths 2 | +3,000 |
| Room Count | | | | | | | |
| Gross Living Area | 2,410 sq.ft. | 2,000 sq.ft. | +12,300 | 2,244 sq.ft. | +4,980 | 1,789 sq.ft. | +18,630 |
| Basement & Finished | N/A | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central/Wall Unit | Central | | Central | | Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 1 Car Garage | 2 Car Garage | -5,000 | 1 Car Garage | | 1 Car Garage | |
| Porch/Patio/Deck | Covered Patio | Covered Patio | | Covered Patio | | Covered Patio | |
| Pool | Inground | No | +12,000 | No | +12,000 | No | +12,000 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 70,800 | ☒ + ☐ - | $ 6,480 | ☒ + ☐ - | $ 3,630 |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | | $ 570,800 | | $ 578,980 | | $ 573,630 |

**SALES COMPARISON APPROACH**

Summary of Sales Comparison Approach   Comparables provided are the good indicators of value available at the time of subject's estimation of value. All four comparables are located within the same market area sharing same market amenities. All other adjustable dissimilarities between subject and comparables were adjusted according to the market reaction to this specific market.

**Indicated Value by Sales Comparison Approach $**   572,000

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

**COST APPROACH TO VALUE (if developed)**   ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value): _____

| **COST APPROACH** | ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ |
|---|---|---|---|---|
| | Source of cost data: | DWELLING | Sq.Ft. @ $ | =$ |
| | Quality rating from cost service:         Effective date of cost data: | | Sq.Ft. @ $ | =$ |
| | Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | Sq.Ft. @ $ | =$ |
| | | | Sq.Ft. @ $ | =$ |
| | | | Sq.Ft. @ $ | =$ |
| | | | | =$ |
| | | Garage/Carport | Sq.Ft. @ $ | =$ |
| | | Total Estimate of Cost-New | | =$ |
| | | Less        Physical        Functional        External | | |
| | | Depreciation | | =$( ) |
| | | Depreciated Cost of Improvements | | =$ |
| | | "As-Is" Value of Site Improvements | | =$ |
| | | | | =$ |
| | | | | =$ |
| | Estimated Remaining Economic Life (if required):        42 Years | INDICATED VALUE BY COST APPROACH | | =$ |

| **INCOME APPROACH** | INCOME APPROACH TO VALUE (if developed)   ☒ The Income Approach was not developed for this appraisal. | | | |
|---|---|---|---|---|
| | Estimated Monthly Market Rent $         X Gross Rent Multiplier         = $ | | | Indicated Value by Income Approach |
| | Summary of Income Approach (including support for market rent and GRM): _____ | | | |

| **PUD** | PROJECT INFORMATION FOR PUDs (if applicable)   ☐ The Subject is part of a Planned Unit Development. |
|---|---|
| | Legal Name of Project: |
| | Describe common elements and recreational facilities: _____ |

**RECONCILIATION**

Indicated Value by: Sales Comparison Approach $ 572,000        Cost Approach (if developed) $ 190,720        Income Approach (if developed) $

Final Reconciliation   The sales comparison approach is the most accurate way of developing an opinion of value for subject property. _____

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed,  ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair: _____

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $        572,000        , as of:        12/09/2013        , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

**ATTACHMENTS**

A true and complete copy of this report contains   13   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

☒ Scope of Work          ☒ Limiting Cond./Certifications   ☒ Narrative Addendum          ☒ Photograph Addenda          ☒ Sketch Addendum
☒ Map Addenda           ☒ Additional Sales               ☒ Cost Addendum               ☒ Flood Addendum             ☐ Manuf. House Addendum
☐ Hypothetical Conditions   ☐ Extraordinary Assumptions   ☐

Client Contact: _____        Client Name:   Godoy, Miriam C.
E-Mail: _____        Address: _____

**SIGNATURES**

| APPRAISER | SUPERVISORY APPRAISER (If required) or CO-APPRAISER (If applicable) |
|---|---|
| Appraiser Name:  Isbel Gonzalez St. Cert. Res. REA RD 4911 | Supervisory or Co-Appraiser Name: |
| Company:   Accurate Appraising Services, Inc. | Company: |
| Phone:  (786) 287-6665         Fax: (888) 812-8288 | Phone:           Fax: |
| E-Mail: appraisingservices@gmail.com | E-Mail: |
| Date of Report (Signature):  December 13, 2013 | Date of Report (Signature): |
| License or Certification #:  RD 4911          State:  FL | License or Certification #:           State: |
| Designation:   State Certified R.E.A RD 4911 | Designation: |
| Expiration Date of License or Certification:   11/30/2014 | Expiration Date of License or Certification: |
| Inspection of Subject:   ☒ Interior & Exterior  ☐ Exterior Only  ☐ None | Inspection of Subject:   ☐ Interior & Exterior  ☐ Exterior Only  ☐ None |
| Date of Inspection:         12/09/2013 | Date of Inspection: |

**GP RESIDENTIAL**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE          3/2007

Main File No. EM-12-Godoy  Page #6

**Building Sketch**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 1016 Almeria Avenue | | | | |
| City | Coral Gables | County | Miami Dade | State FL | Zip Code 33134 |
| Lender | Godoy, Miriam C. | | | | |



**Location Map**

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1016 Almeria Avenue | | | | | |
| City | Coral Gables | County | Miami Dade | State | FL | Zip Code | 33134 |
| Lender | Godoy, Miriam C. | | | | | |



**Subject Photo Page**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 1016 Almeria Avenue | | | | |
| City | Coral Gables | County Miami Dade | | State FL | Zip Code 33134 |
| Lender | Godoy, Miriam C. | | | | |



**Subject Front**

1016 Almeria Avenue
Sales Price
Gross Living Area          2,410
Total Rooms                6
Total Bedrooms             3
Total Bathrooms            3
Location                   Suburban
View                       Residential
Site                       6,250 Sq.Ft.
Quality                    Average
Age                        19 Years



**Subject Front**



**Subject Street**

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 1016 Almeria Avenue | | | |
| City | Coral Gables | County Miami Dade | State FL | Zip Code 33134 |
| Lender | Godoy, Miriam C. | | | |



**Subject Interior**

| | |
|---|---|
| 1016 Almeria Avenue | |
| Sales Price | |
| Gross Living Area | 2,410 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Suburban |
| View | Residential |
| Site | 6,250 Sq.Ft. |
| Quality | Average |
| Age | 19 Years |



**Subject Interior**



**Subject Interior**

Main Document - BK12 Godoy Page #16

## Comparable Photo Page

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1016 Almeria Avenue | | | | | |
| City | Coral Gables | County | Miami Dade | State | FL | Zip Code 33134 |
| Lender | Godoy, Miriam C. | | | | | |



### Comparable 1

1543 Bird Road

| | |
|---|---|
| Prox. to Subject | 1.00 miles SW |
| Sales Price | 500,000 |
| Gross Living Area | 2,000 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Suburban |
| View | Residential/Traffic |
| Site | 6,000 Sq.Ft. |
| Quality | Average |
| Age | 11 Years |



### Comparable 2

3916 Anderson Road

| | |
|---|---|
| Prox. to Subject | 0.82 miles SE |
| Sales Price | 572,500 |
| Gross Living Area | 2,244 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Suburban |
| View | Residential |
| Site | 5,000 Sq.Ft. |
| Quality | Average |
| Age | 19 Years |



### Comparable 3

2710 Anderson Road

| | |
|---|---|
| Prox. to Subject | 0.29 miles E |
| Sales Price | 570,000 |
| Gross Living Area | 1,789 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Suburban |
| View | Residential |
| Site | 9,075 Sq.Ft. |
| Quality | Average |
| Age | 58 Years |

THIS DOCUMENT HAS A COLORED BACKGROUND • MICROPRINTING • LINEMARK™ PATENTED PAPER

AC#687896

**STATE OF FLORIDA**

DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
FLORIDA REAL ESTATE APPRAISAL BD

SEQ# L12112901939

| DATE | BATCH NUMBER | LICENSE NBR |
|------|--------------|-------------|
| 11/29/2012 | 128154260 | RD4911 |

The CERTIFIED RESIDENTIAL APPRAISER
Named below IS CERTIFIED
Under the provisions of Chapter 475 FS.
Expiration date: NOV 30, 2014

GONZALEZ, ISBEL
19651 SW 132ND PLACE
MIAMI                    FL 33177

RICK SCOTT
GOVERNOR

DISPLAY AS REQUIRED BY LAW

KEN LAWSON
SECRETARY